**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA GIBBONS,** | ) | |
| **Plaintiff,** | ) | **No. 15 CV 4950** |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **VILLAGE OF SAUK VILLAGE,** | ) | |
| | ) | **December 6, 2016** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Lisa Gibbons brings this three-count action alleging that the Village of Sauk Village ("Village") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1983 when it terminated her from employment and then refused to rehire her. (See R. 61, Third Am. Compl.) The parties consented to this court's jurisdiction pursuant to 28 U.S.C § 636(c). (R. 18.) Before the court is Gibbons's motion to compel the Village to produce certain recordings of and minutes from its executive session meetings in response to her Interrogatory No. 18 and Requests to Produce Nos. 12 and 13. (R. 73.) For the following reasons, the motion is granted in part and denied in part:

**Background**

Gibbons accuses the Village of retaliating against her for having filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII. (R. 61, Third Am. Compl. ¶¶ 43-50, 70-77.) She also alleges that the Village terminated her without adequate due process in violation of 42 U.S.C. § 1983. (Id. ¶¶ 51-69.) The Village police department

employed Gibbons for 24 years, during which she held various positions. (Id. ¶ 7.) According to her complaint, Gibbons was subject to race-based discrimination and harassment in 2009 and 2010 which led her to file EEOC charges. (Id. ¶¶ 8-9.) Gibbons eventually sued the Village in federal court for discrimination in 2010 and settled that suit in August 2011. (Id. ¶ 9.)

In November 2012, David Hanks was appointed mayor of the Village. (Id. ¶ 10.) Gibbons alleges that Mayor Hanks began retaliating against those employees who had filed lawsuits against the Village, resulting in her termination on February 19, 2014, without prior notice, a pre-termination hearing, or an opportunity to transfer to another position. (Id. ¶¶ 10-12, 14, 16, 18-23.) On December 4, 2014, Gibbons filed an EEOC charge based on her February 2014 termination. (Id. ¶ 28.) Gibbons alleges that she then corresponded with Mayor Hanks on December 7, 2014, and he told her that she would be rehired to a full-time position. (Id. ¶ 30.) She further alleges that Mayor Hanks informed the Village Board of Trustees during an executive session on December 9, 2014, that he intended to rehire Gibbons. (Id. ¶ 31.) However, according to Gibbons, Mayor Hanks discovered shortly thereafter that she had filed another EEOC charge and stopped communicating with her. (Id. ¶¶ 32-35.) Despite Gibbons's subsequent efforts to reach Mayor Hanks, she did not hear from him until January 13, 2015, when he sent her a job description and asked whether Gibbons was interested in the position. (Id. ¶¶ 34, 37-38.) Although Gibbons claims that she responded by asking

for additional information about the position, Mayor Hanks never again communicated with her, nor did he ultimately rehire her. (Id. ¶¶ 39-40.)

Gibbons initiated this suit in June 2015, and now seeks to compel the Village to produce recordings and minutes of executive session meetings held by the Village's Trustees, arguing that the true motivation for her termination and for the Village's refusal to rehire her would be revealed in their deliberations. (R. 73, Pl.'s Mot. at 4-5.) In its responses to Gibbons's discovery requests and to the current motion, the Village admits that during meetings on February 18, February 25, March 4, and December 9, 2014 (collectively, "Board Meetings"), the Board of Trustees discussed Gibbons's employment status. (R. 66, Ex. A, Def.'s Resp. to Pl.'s Requests to Produce at 3; R. 75, Def.'s Resp. to Pl.'s Mot. at 2.) The Village disclosed minutes from the meetings held on February 25 and March 4, 2014, but did not release the recordings from those meetings. (R. 75, Def.'s Resp. to Pl.'s Mot. at 5.) The Village has also refused to produce the minutes and recordings from the meetings held on February 18 and December 9, 2014, claiming that they are protected by the Illinois Open Meetings Act, 5 ILCS 120/2.06(e) ("OMA"), the deliberative process privilege, and to some extent, attorney-client privilege. (Id. at 2-7.) Gibbons argues in her motion that OMA does not apply in cases involving claims that arise under federal law. (R. 73, Pl.'s Mot. at 5-6.) She also argues that the minutes and recordings do not fall within the scope of the deliberative process privilege under federal common law, and even if they do, her particularized need for the information outweighs the Village's need for confidentiality. (Id. at 7-10.)

Pursuant to this court's order on October 28, 2016, the Village provided the court with a copy of the audio recordings from each of the Board Meetings for *in camera* review. (See R. 72.)

**Analysis**

**A. Illinois Open Meetings Act**

The relevant portion of OMA provides that, absent the affected public body's consent, "the verbatim record of a meeting closed to the public shall not be open to public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act." 5 ILCS 120/2.06(e). The claims in this case arise under federal law, and thus are governed by the principles of federal common law. Fed. R. Evid. 501. Gibbons correctly points out that the privilege memorialized in OMA does not exist in federal common law. (See R. 73, Pl.'s Mot. at 5 (citing *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 451 (N.D. Ill. 2006)).) However, a "strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be done at no substantial cost to federal substantive and procedural policy." *Sronkoski v. Schaumburg Sch. Dist., No. 54*, No. 08 CV 271, 2009 WL 1940779, at *3 (N.D. Ill. July 1, 2009) (citing *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981)). In deciding whether to recognize state privileges, the Seventh Circuit has instructed district courts to "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and

the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Mem'l Hosp.,* 664 F.2d at 1062-63.

The court recognizes that the policy underlying OMA is to promote frank and candid discussions of legal and policy matters. *See Id.* at 1061; *see also Sandholm v. Dixon Public Sch. Dist. No. 170*, No. 09 CV 50119, 2010 WL 899032, at *2 (N.D. Ill. March 10, 2010). Nonetheless, the court has weighed the competing interests and finds that Gibbons's need for the minutes and recordings from the Board Meetings outweighs the policy underlying OMA. In order for Gibbons to pursue her claims under Title VII, she must ascertain the motive and basis for the Village's decision to terminate her and then, later, decline to rehire her. Gibbons also has an interest in discovering information relating to the Village's decision to remove her from her position without two-weeks' notice. The audio recordings of the Board Meetings will aid in uncovering the facts guiding the Board of Trustees' decisions regarding Gibbons's employment and thus are directly relevant to her claims. *See Kodish*, 235 F.R.D. at 452-53 (the court declined to recognize the OMA privilege finding that "the interests served by the open meeting privilege are overcome by the need for probative evidence").

Furthermore, there is no compelling policy interest to justify protecting the communications in the closed session meeting. The Village points to *Tumas v. Board of Education of Lyons Township High School District No. 204*, No. 06 CV 1943, 2007 WL 2228695 (N.D. Ill. July 31, 2007), to support its need for confidentiality, but *Tumas* is distinguishable from this case because the meeting

minutes at issue in *Tumas* discussed litigation strategy and the potential settlement of the plaintiff's suit after it had already been filed, *see id.* at *1. The *Tumas* court found that those topics fell within express exceptions under OMA for closed meetings discussing pending or probable litigation. *See id.* at *8 (citing 5 ILCS 120/2(c)(11)). The court also concluded that the plaintiff had not shown that her need for the materials outweighed the defendants' need for confidentiality, without elaborating on the policy justifications underlying OMA. *Id.* at *7. Here, unlike in *Tumas*, Gibbons seeks information about the process leading up to the Village's decisions to terminate her and not rehire her, both of which occurred well before she filed the current suit. *See Mulligan v. Vill. of Riverside*, No. 11 CV 8200, 2013 WL 1340581, at *2 (N.D. Ill. April 1, 2013) (distinguishing *Tumas* for similar reasons).

The Village also relies on *Sandholm*, 2010 WL 899032, at *1-2, to argue that the policy underlying OMA outweighs Gibbons's need for the information she seeks, (see R. 75, Def.'s Resp. to Pl.'s Mot. at 6). The Village points out that the court in *Sandholm* did not order the disclosure of sought-after material because it found the meeting discussions were largely irrelevant and unsupportive of the plaintiff's claims. 2010 WL 899032, at *2-3. But the discussions here are relevant to Gibbons's employment status, and the court is reluctant to bar discovery in this case based on its own assessment of whether the information is supportive of her claims. For these reasons, the court finds that Gibbons's need to ascertain the motive and basis for the Village's decision to terminate her outweighs any policy

furthered by OMA. Accordingly, the court declines to apply the OMA privilege to the disputed discovery requests.

**B. Federal Deliberative Process Privilege**

The Village alternatively contends that any closed session meetings regarding Gibbons's termination or potential rehiring are also protected by the deliberative process privilege under federal common law. (R. 75, Def.'s Resp. to Pl.'s Mot. at 2-5.) "The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The underlying policy of the privilege is to promote frank discussion of legal and policy matters that are essential to the decision-making process of a governmental agency. *Id.* However, the privilege is not absolute and "may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Id.* Courts conduct a two-step inquiry to determine whether the information is protected under the privilege. *Sandholm*, 2010 WL 899032, at *3. First, the governmental agency must show that the privilege applies. *Id.* The privilege applies only to "pre-decisional" and "deliberative" matters. *Id.* Communications are pre-decisional if the information was generated before the adoption of an agency policy, and deliberative if they involve the give and take of the consultative process. *Id.* If the privilege applies, the court may still order the disclosure if the plaintiff demonstrates a particularized need for the documents that outweighs the defendant's need for confidentiality. *Id.*

The court finds that the deliberative process privilege applies to the minutes and recordings at issue here because they reflect pre-decisional information about whether Gibbons's employment status should change, which appears to have led to the separate decisions to officially terminate her and then not rehire her. *See Mulligan,* 2013 WL 1340581, at *2 (finding privilege applies to transcripts from meeting prior to plaintiff's termination reflecting discussions about whether plaintiff should be terminated). The meetings on February 18 and February 25, 2014 (during which the Board formally approved Gibbons's layoff), pre-dated or occurred just prior to the final vote to remove Gibbons from her position. *See Sronkoski*, 2009 WL 1940779, at *2 (finding that meetings leading up to and including a vote to terminate an employee were pre-decisional). And according to Gibbons's own timeline, the meetings on March 4 and December 9, 2014, also pre-date the alleged decision not to rehire her. (See R. 73, Pl.'s Mot. at 8.) The court also finds that the minutes and recordings from the Board Meetings include deliberative information because the Board discussed Gibbons's employment situation and related personnel decisions, and the discussions include the give and take of the consultative process regarding whether to terminate or rehire her. The privilege does not apply to "purely factual material," but does apply to "factual matters inextricably intertwined with" pre-decisional policy discussions. *See Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374-75 (7th Cir. 2004). Although the recordings from the Board Meetings include factual information, such information is intertwined with the personnel matters that the Board was considering. *See*

*Sronkoski*, 2009 WL 1940779, at *2. The court thus concludes that the deliberative process privilege applies to the closed meeting minutes and recordings.

However, despite the application of the deliberative process privilege, Gibbons has a particularized need for the information because she is alleging that the Village wrongfully retaliated against her, and the Village's motives for terminating her employment are directly at issue. *See Mulligan,* 2013 WL 1340581, at *2; *Sronkoski*, 2009 WL 1940779, at *3. Given the nature of the claims in this case, the court finds that Gibbons's particularized need for the minutes and recordings outweighs the Village's need for confidentiality. *See Hartman v. Lisle Park Dist.*, No 01 CV 1904, 2002 WL 448999, at *1 (N.D. Ill. March 22, 2002). Gibbons alleges that the Village unlawfully retaliated against her for filing EEOC charges by terminating her and then failing to rehire her. (R. 61, Third Am. Compl. ¶¶ 43-50, 70-77.) Under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), the Village argues that it had a legitimate, non-retaliatory reason for Gibbons's termination—its poor financial condition. Gibbons must show in response that the Village's stated reasons for terminating her are pretextual. *See id.* at 807. Gibbons thus has a "particularized need" for the closed-session materials, which reflect the Village's "motive and basis" for terminating her. *See Kodish*, 235 F.R.D. at 452 ("[I]n order for Plaintiff to pursue his § 1983 civil rights claim, he must attempt to ascertain the motive and basis for the Fire District's decision to terminate him."). Irrespective of

whether the materials are particularly helpful to Gibbons, they are directly relevant to Gibbons's ability to show pretext.

Though the Village emphasizes the need to protect its ability to have frank discussions of legal and policy matters, limitations should be placed on its ability to keep discussions confidential in cases where, as here, the discussion itself may be central to a plaintiff's retaliation claim. *See Hall v. Sterling Park Dist.*, Nos. 08 CV 50116 & 09 CV 50146, 2011 WL 1748710, at *10 (N.D. Ill. May 4, 2011). Furthermore, the court is not persuaded by the Village's argument that Gibbons can obtain enough of the pertinent non-privileged information she seeks through depositions. (See R. 75, Def.'s Resp. to Pl.'s Mot. at 5.) Deposition testimony is not necessarily an adequate substitute for contemporaneous evidence in a discrimination case. *See Sronkoski*, 2009 WL 1940779, at *3 (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 928 F.2d 118, 122-23 (4th Cir. 1991) (noting that a contradiction between post hoc and contemporaneous explanations for an employment action is evidence of pretext)).

**C. Attorney-Client Privilege**

The Village asserts for the first time in its response to Gibbons's current motion that portions of the recordings and minutes from the February 18 and February 25, 2014 meetings are protected by attorney-client privilege. (R. 75, Def.'s Resp. to Pl.'s Mot. at 6-7.) However, Rule 26(b)(5) requires that parties claiming attorney-client privilege describe the nature of the privileged documents in a way that will allow other parties to assess the claim. *See Sandra T.E. v. S. Berwyn Sch.*

*Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010). The Village provides little information regarding the basis for its assertion of privilege. Although the Village identified "sections" of the February 18 and 25, 2014 recordings as "question and attorney response[s]," it is far from clear which specific parts of the discussion involve the provision of legal advice, especially because the Village does not explicitly identify when an attorney is speaking. Nevertheless, there is just enough information for the court to determine that sections 40:50 through 41:03, and 44:15 through 44:20 of the February 18, 2014 recording are privileged. The court also finds that attorney-client privilege applies to 1:26:40 through 1:26:55 of the February 25, 2014 recording. Accordingly, the Village may redact those portions of the recordings because they convey the communication of legal advice.

**Conclusion**

For the foregoing reasons, Gibbons's motion to compel is granted in part and denied in part. The Village shall produce for Gibbons's review the minutes and audio recording of the February 18, 2014 closed-session meeting, and the audio recording of the February 25, 2014 meeting, with the noted redactions. The Village shall also produce the audio recording of the March 4, 2014 closed-session meeting and the minutes and audio recording of the December 9, 2014 meeting in their entirety.

To the extent the Village is concerned about the confidentiality of the discussions, the following protective order is entered pursuant to Federal Rule of Civil Procedure 26(c) to address that concern:

1. If Gibbons's counsel of record in this case chooses to review the recordings from the Board Meetings and the relevant minutes discussed herein, they will be for his review only.

2. Gibbons's counsel may use the recordings and the minutes (if a copy is requested) only for purposes of this lawsuit and may share them only with Gibbons and counsel's staff as necessary for the prosecution of this matter.

3. Gibbons is advised that if her counsel chooses to request a copy of the recordings and the minutes, the Village will be entitled to use them to defend against her claims.

4. Gibbons's counsel shall not make or retain any copies of the recordings or the minutes, unless they are in the form of court filings, and may not publish, describe, or post any portion of the recordings in any media.

5. If Gibbons seeks to file any of the recordings (or a transcript of the same) or the minutes as an exhibit to any court submission, she must file them provisionally under seal and proceed as provided under Local Rule 26.2.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**