## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LISA GIBBONS, | ) | |
| | ) | No. 15 CV 4950 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| VILLAGE OF SAUK VILLAGE, an | ) | |
| Illinois Municipality, | ) | |
| | ) | October 30, 2017 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Lisa Gibbons brings this action against the Village of Sauk Village ("the Village") pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act, claiming that the Village engaged in unlawful employment practices by terminating her employment and refusing to rehire her because she engaged in protected activities, including filing a charge with the EEOC. Gibbons also claims that the Village denied her due process by failing to provide her with a pre- or post-termination hearing, as required under her employment contract. Before the court are Gibbons's motions *in limine* Nos. 1-16[1] and the Village's motions *in limine* Nos. 1-15. For the following reasons, Gibbons's Motion Nos. 1, 5-7, 13, 14, and 16 are granted, Gibbons's Motion No. 3 is granted in part and denied in part, Gibbons's Motion No. 4 is taken under advisement, Gibbons's Motion Nos. 2, 9-12, and 15 are denied, the Village's Motion Nos. 1, 2, 3, 6, 7, 10, 11, 15(b)-15(e), and 15(k) are

---

[1] Although Gibbons submitted 15 motions, her last motion is numbered 16, (R. 123-137), because she skipped number 8.

granted, the Village's Motion No. 5 is granted in part and denied in part, the Village's Motion No. 14 is taken under advisement, and the Village's Motion Nos. 4, 8, 9, 12, 13, 15(a), and 15(f)-15(j) are denied:

## Legal Standard

Although not expressly authorized by the Federal Rules of Evidence, the authority to make rulings on motions *in limine* springs from the court's inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine may be used to insulate the jury from potentially harmful or unfairly prejudicial evidence." *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). But because the primary aim of motions *in limine* is to exclude evidence that is clearly inadmissible on all possible grounds, some rulings are best left until trial so that the context, foundation, and relevance of the contested evidence can be better understood. *Id.* (noting that evidence should be excluded, *in limine*, only to the extent that clearly inadmissible evidence is eliminated). As such, neither a ruling granting a motion *in limine*, nor a ruling denying one needs to be the final word on the matter. The court is free to revisit the following rulings during trial. *See Luce*, 469 U.S. at 41-42.

## Analysis

Before addressing the contested motions, the court notes that Gibbons's Motion Nos. 1 and 5-7, and the Village's Motion Nos. 1, 3, 7, and 10 are not opposed. Given the parties' agreement, and because the court agrees that the requests made in these motions are appropriate, the court grants the unopposed motions.

## A.  Gibbons's Motions *in Limine*

Gibbons filed 15 motions *in limine* on September 15, 2017.  (R. 123-137.)  The Village opposes the following: Motion Nos. 2-4 and 9-16.  (R. 144, Def.'s Resp.)

### 1.  Motion No. 2

The motion is denied.  Gibbons seeks to prevent the Village from offering its proposed Ex. 10, which consists of 40 pages of summaries of the Village's financial documents.  (R. 124, Pl.'s Mot. No. 2 at 1.)  Gibbons asserts that the exhibit is inadmissible because, according to her, it represents a summary and the Village has not made the underlying documents supporting this summary available for Gibbons to inspect.  (Id.)  Gibbons also contends that she was not put on notice of the Village's intent to use this exhibit as it was never disclosed during any deposition in the case.  (Id.)  Further, Gibbons contends that the documents were created for this litigation and not generated and maintained within the ordinary course of business. (Id.)  The Village responds that this financial summary was made available to Gibbons during discovery, such that Gibbons was put on notice of its existence and the Village's intent to use it as an exhibit.  It further responds that it is too late for Gibbons to challenge this document after she failed to take the deposition of Village Financial Director Mohan Rao, who would have explained how the document is maintained in the ordinary course of business.  (R. 144, Def.'s Resp. at 1.)

A party may use a summary to prove the content of voluminous records, so long as the originals of the record are provided to the other party for examination. Fed. R. Evid. 1006.  However, a party cannot fail to obtain information that is

available during discovery and then demand "the extreme remedy" of having that information barred as evidence during trial. *SEC v. Ferrone*, No. 11 CV 5223, 2016 WL 723017 at *6 (N.D. Ill. Feb. 22, 2016).

It appears from the Village's motion that Ex. 10 was disclosed to Gibbons during discovery more than a year ago. (R. 144, Def.'s Resp. at 1.) If she thought the exhibit represents a summary, Gibbons should have requested any additional documents from the Village at the time she was put on notice that the Village was using it to demonstrate its financial situation. In any event, according to the Village, Ex. 10 is not an improper summary because it is kept in the ordinary course of business. Gibbons asserts that the exhibit was created for use in this litigation. (R. 124, Pl.'s Mot. No. 2 at 2.) The basis of this contention is that the document covers only 10 months of the Village's financials, up to the date that she was terminated in 2014. (Id.) The Village responds that it shortened the time frame of these summaries because it believed this was the most pertinent timeframe, the period encompassing Gibbons's termination. (R. 144, Def.'s Resp. at 1.) If Gibbons did not believe that the summaries were kept in the ordinary course of the Village's business, or felt that the limitation to 10 months of summaries was inappropriate, she had the chance to raise this issue during discovery.

### 2.    Motion No. 3

The motion is granted in part and denied in part. Gibbons next seeks to prevent the Village from offering evidence that it has not produced during discovery. (R. 125, Pl.'s Mot. No. 3 at 1.) The Village agrees with the spirit of this

motion, but objects to the extent that it would bar witnesses from testifying as to their knowledge of records and documents. (R. 144, Def.'s Resp. at 2-3.) Specifically, the Village contends that because Gibbons failed to depose the Village's Financial Director, Rao, the court should not prevent Rao from testifying as to documents and other evidence of which he has knowledge. (Id. at 2.)

Pursuant to Federal Rule of Civil Procedure 26(a)(3)(A), parties are required to identify each document and other exhibits that they intend to use at trial. Parties are not able to use documents that were not disclosed during discovery, but which magically appear later in the litigation. *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 753-54 (7th Cir. 2012). The Village certainly will not be able to introduce any documents during trial that have not been disclosed during discovery or in its pre-trial exhibits. *See* Fed. R. Civ. P. 37(c)(1). And although the Village's witnesses will be able to testify regarding documents and evidence of which they have knowledge, they are barred from describing any documents that the Village should have but did not produce during discovery.

### 3. Motion No. 4

The motion is taken under advisement. Gibbons seeks to bar the Village from requesting documents or commenting on discovery in the presence of the jury. (R. 126, Pl.'s Mot. No. 4 at 1.) The Village opposes the motion only to the extent that it is unclear what Gibbons is trying to bar, and asks that the motion be discussed at the pretrial conference. (R. 144, Def.'s Resp. at 3.) The court agrees with the Village and the issue will be addressed at the pretrial conference.

### 4.    Motion No. 9

The motion is denied.    Gibbons seeks to exclude reference to the determination of the EEOC on the claims she filed alleging retaliatory discharge and failure to hire.    (R. 130, Pl.'s Mot. No. 9 at 1.)    Gibbons argues that the admission of these determinations will confuse the jury and be prejudicial to Gibbons's claims, and that they constitute hearsay.    (Id. at 1-2.)    The Village contends in response that the EEOC determination is both relevant and not unfairly prejudicial to Gibbons, as the finding of the EEOC was based on Gibbons's submissions and the Village's responses.    (R. 144, Def.'s Resp. at 4.)    It also argues that the EEOC determination falls under the public records exception to the hearsay rule.    (Id.)

The Seventh Circuit has said that "[a]s a general matter administrative findings regarding claims of discrimination may be admitted" under the public records exception to the hearsay rule.    *Young v. Jones Green Mgmt.*, 327 F.3d 616, 624 (7th Cir. 2003); *see also* Fed. R. Evid. 803(8).    Whether the EEOC determination is admissible may hinge on whether the prejudicial impact outweighs its value under Federal Rule of Evidence 403.    *Young*, 327 F.3d at 624.    The EEOC determination at issue here states that the EEOC was unable to conclude that the Village's actions had violated the law.    (R. 130, Pl.'s Mot. No. 9 at 1.)    It also states that the EEOC was not certifying that the Village complied with the law.    (Id.)    Because the language used in the determination is neutral, Gibbons has not shown

that its prejudicial effect so outweighs its probative value that it should be excluded at this point.

5.     **Motion No. 10**

The motion is denied.  Gibbons seeks to bar evidence about David Hanks's status as a Baptist minister.  (R. 131, Pl.'s Mot. No. 10 at 1.)  Gibbons contends that this testimony would be hearsay and is not relevant.  (Id. at 1-2.)  Given that Hanks can describe his own employment on the stand, it is unclear what out-of-court statement Gibbons suggests would amount to hearsay.  The Village contends that this information is admissible, as it is standard background information about Hanks's employment.  (R. 144, Def.'s Resp. at 5.)  Evidence regarding a party's employment is typically relevant and is not unfairly prejudicial, whether or not that employment is church-related.  *See Simmons v. City of Chi.*, No. 14 CV 9042, 2017 WL 3704844, at *7 (N.D. Ill. Aug. 28, 2017).  But to be clear, under Federal Rule of Evidence 404 this evidence is not admissible to show that Hanks acted on a particular occasion in accordance with a particular character trait.

Gibbons contends that, should this court allow such testimony as to Hanks's status as a minister, she should be able to introduce evidence of Hanks's non-conformity with the Baptist faith, and evidence of the Baptist faith's position on women holding leadership positions within the church.  (R. 131, Pl.'s Mot. No. 10 at 2.)  Because Gibbons does not argue here that Mayor Hanks's religious affiliation played into any of the events underlying her allegations, this court fails to see how such evidence is relevant.  That is especially true because Hanks will be allowed to

reference his status as a Baptist minister only for the limited purpose of providing standard background information.

### 6. Motion No. 11

The motion is denied without prejudice. Gibbons seeks to bar witnesses Rao and Hanks from providing expert testimony as to the Village's financial condition. (R. 132, Pl.'s Mot. 11 at 1.) Gibbons contends that the two cannot testify as expert witnesses because the Village failed to provide an underlying report with their opinions pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). (Id. at 1-2.) The Village contends that the testimony of Rao and Hanks regarding its finances is permissible lay testimony based on their first-hand knowledge of the Village's finances and operations that they have gained through their positions of employment. (R. 144, Def.'s Resp. at 7.)

Federal Rule of Evidence 701 restricts lay witnesses to providing opinions which are: (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact at issue; and (c) are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Witnesses may give testimony as to their own perceptions and knowledge of their participation in the day-to-day affairs of a business. *United States v. Polishan*, 336 F.3d 234, 242 (3d. Cir. 2003). At this stage, it is unclear what testimony Rao and Hank will give regarding the Village's finances. These witnesses should be permitted to give lay testimony regarding their opinions and perception of the Village's finances at the time of Gibbons's termination. They

should not be permitted, however, to give opinions that are considered scientific, technical, or specialized. *See* Fed. R. Evid. 701(c). Gibbons may re-raise this objection at trial as needed.

### 7. Motion No. 12

The motion is denied. Gibbons seeks to bar any evidence meant to show that Deputy Fire Chief Rich Atwood was similarly situated to Gibbons. (R. 133, Pl.'s Mot. No. 12 at 1.) Gibbons contends that any such evidence should be barred because it would be confusing to the jury. (Id. at 2.) The Village contends that evidence demonstrating that Atwood was similarly situated is relevant both to Gibbons's claims and to its defense that Gibbons's layoff was a result of the Village's financial condition. (R. 144, Def.'s Resp. at 8-9.) This court agrees that evidence of another layoff around the time that Gibbons was terminated would be relevant to the Village's defense.

Gibbons argues that the Village will be unable to show that Atwood is similarly situated to her at trial. (R. 133, Pl.'s Mot. No. 12 at 2.) But whether evidence will be credible or persuasive speaks to its weight rather than its admissibility. And Gibbons's blanket statement that evidence regarding Atwood's similarity will confuse the jury is insufficient to demonstrate that it should be excluded altogether.

### 8. Motion No. 13

The motion is granted. Gibbons seeks permission to treat current or former Village employees Hanks, J.W. Fairman, Ed Meyers, and Derrick Burgess as

witnesses adverse to her case. (R. 134, Pl.'s Mot. No. 13. at 1.) The Village contends that these witnesses' status as current or former employees does not alone demonstrate that they are adverse to Gibbons, and further, it argues that the court should not automatically allow Gibbons to use leading questions absent some further showing that these witnesses are in fact adverse to her interests. (R. 144, Def.'s Resp. at 11.)

Federal Rule of Evidence 611 allows a party to address leading questions to a "hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Current employees are often treated as adverse witnesses to the employer's opposing party, as they are considered to be identified with an adverse party. *Ellis v. City of Chi.*, 667 F.2d 606, 613 (7th Cir. 1981) (holding that current officers of the defendant city are adverse witnesses to the plaintiff). In addition to current employment, a witness is most likely to be treated as adverse where he or she was employed at the time of the incident in question and had a hand in the incident that resulted in suit. *See Ratliff v. City of Chi.*, No. 10 CV 739, 2012 WL 7993412, *1 (N.D. Ill. Nov. 20, 2012). Even when that involvement is tangential, an employee of a city defendant may be considered to be identified with an adverse party. *Id.*

All four of the named witnesses' current or former roles with the Village qualify them for treatment as witnesses adverse to Gibbons. *See Ratliff*, 2012 WL 7993412, at *1. Hanks was the Village's mayor at the time of Gibbons's termination and is alleged to have played a role in her termination. (R. 134, Pl.'s Mot. No. 13. at

2.)  Similarly, Fairman is a former employee of the Village who gave the authority to hire a new records clerk, but turned down a recommendation to re-hire Gibbons. (R. 134, Pl.'s Mot. No. 13 at 2.)  Meyers is not only a current employee of the Village, but he was a Village trustee at the time of Gibbons's termination and played a role in that decision.  (Id.)  Burgess is the current mayor of the Village.  (Id.)

### 9.    Motion Nos. 14 & 15

Motion No. 14 is granted, but Motion No 15 is denied.  Gibbons seeks to bar the Village from introducing evidence regarding her failure to mitigate damages (Motion No. 15) as well as evidence regarding her job performance or subsequent separation of employment from the Merrillville Police Department following her termination from the Village (Motion No. 14).  (R. 135, Pl.'s Mot. No. 14 at 1; R. 136, Pl.'s Mot. No. 15 at 1.)  Gibbons first argues that evidence regarding her subsequent job performance and employment at the Merrillville Police Department is not relevant to the issue of her mitigation of damages.  (R. 135, Pl.'s Mot. No. 14 at 1.) Gibbons also contends that the Village should be barred from raising the affirmative defense of failure to mitigate damages, as the Village did not disclose this defense in its pleadings.  (R. 136, Pl.'s Mot. No. 15 at 1.)  The Village admits that it did not assert the defense of failure to mitigate damages in its responsive pleadings, but it asks that this court allow it to assert this defense now, arguing that Gibbons will suffer no harm, surprise, or prejudice from its late assertion of the defense.  (R. 144, Def.'s Resp. at 14.)

Failure to mitigate damages is an affirmative defense, *Lasley v. Moss*, 500 F.3d 586, 590 (7th Cir. 2007), and failure to assert an affirmative defense in a responsive pleading generally results in waiver, *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). However, delay in raising a defense will only result in waiver if the plaintiff is harmed as a result. *Curtis*, 436 F.3d at 711. Generally, where the defendant can show that the plaintiff was put on notice of the defense during discovery, the defense may be raised at trial. *Kakkanathu v. Rohn Indus., In*c., No. 05-1337, 2008 WL 4330144, at *2 (C.D. Ill. Sept. 17, 2008) (allowing defendant to raise defense of failure to mitigate at trial where plaintiff was put on notice of the defense during discovery).

In this case, Gibbons alleges that she was not given adequate notice of the Village's mitigation defense. (R. 136, Pl.'s Mot. No. 15 at 2.) But according to the Village, Gibbons was asked numerous questions during discovery about her job search after being terminated, and was asked specifically about any attempts she made to mitigate her damages. (R. 144, Def.'s Resp. at 16.) As such, this court finds that Gibbons was sufficiently placed on notice of the Village's intent to raise the mitigation defense. Accordingly, Motion No. 15 is denied.

Turning to Gibbons's request that this court specifically bar evidence regarding her job performance at and separation of employment from the Merrillville Police Department, Gibbons contends that information is not relevant and highly prejudicial. In response to Motion No. 14 the Village repeats its argument as to waiver of its mitigation defense, but the Village has not made any

attempt to establish how Gibbons's performance at a subsequent job is relevant in these proceedings. Because this court agrees that evidence of Gibbons's job performance and termination is not relevant, and that its prejudicial impact would outweigh its probative value, Motion No. 14 is granted.

### 10. Motion No. 16

The motion is granted. Gibbons seeks to bar evidence of unemployment compensation she received following her termination from the Village. (R. 137, Pl.'s Mot. No. 16 at 1.) Gibbons contends that evidence of these unemployment payments should be excluded because, she says, these payments constitute collateral source income. (Id. at 1-2.) The Village agrees that it will not present evidence or testimony of Gibbons's unemployment benefits to the jury, but contends that they should be able to present such evidence to the court. (R. 144, Def.'s Resp. at 17.) According to the Village, it should be permitted to deduct the amount of unemployment benefits Gibbons received from any back pay award.

Because the Village agrees that this evidence should not be offered to the jury during trial, the motion is granted. The issue of reducing an award of back pay is better left to post-trial motions. If Gibbons prevails and recovers an award for back pay, the Village may raise the issue of whether unemployment compensation benefits should reduce the back pay award amount.

**B.** **The Village's Motions** *in Limine*

The Village filed 15 motions *in limine* on September 15, 2017. (R. 108-122.) Gibbons opposes the following: Motion Nos. 2, 4-6, 8-9, and 11-15. (R. 145, Pl.'s Resp.)

### 1. Motion No. 2

The motion is granted. The Village asks that former Police Chief Tim Holevis and Sergeant Rebecca Sailsbery be treated as adverse witnesses to the Village at trial. (R. 109, Def.'s Mot. No. 2 at 1.) The Village contends that Holevis and Sailsbery have a continuing social relationship with Gibbons, and are therefore witnesses identified with an adverse party under Rule 611. (Id. at 2.) Gibbons contends that these witnesses are not hostile to the Village, as they are both either current or former Village employees. (R. 145, Pl.'s Resp. at 1.) Gibbons further asserts that she has no continuing relationship with Holevis, and argues that her admittedly on-going relationship with Sailsbery is insufficient to show that she is hostile or adverse to the Village. (Id. at 2-3.)

While the court is not persuaded by the Village's on-going relationship argument, the court is persuaded by the undisputed facts that both Holevis and Sailsbery have filed multiple lawsuits against the Village and that they were both represented by the current counsel for Gibbons in each of those cases. Sailsbery also has a pending case against the Village in which she has sued Hanks and Fairman individually. *See Sailsbery v. Vill. of Sauk Vill.*, No. 15 CV 10564 (N.D.

Ill).  Under these circumstances, both Holevis and Sailsbery may be treated by the Village as adverse witnesses.

### 2.    Motion No. 4

The motion is denied.  The Village seeks to limit Gibbons from testifying or producing evidence regarding her attempts to mitigate damages through a job search, apart from the six job applications that she provided during discovery and that are compiled in her proposed Ex. 23.  (R. 111, Def.'s Mot. 4 at 2.)  As explained above with respect to Gibbons's Motions No. 14 and 15, the Village will be permitted to present evidence at trial of Gibbons's failure to mitigate damages, because she had sufficient notice of this defense during discovery.  Specifically, during discovery, Gibbons was asked to produce "any and all document[s] or writing[s] that evidence your attempts to mitigate damages."  (R. 111, Def.'s Mot. 4 at 1.)  In response, Gibbons listed 38 entities to which she submitted job applications.  (R. 145, Pl.'s Resp. at 4.)  However, Gibbons only provided job applications from six of these employers to support this contention, and she has now listed these six applications in her Ex. 23.  (R. 111, Def.'s Mot. 4 at 1.)

The Village argues that because Gibbons did not produce job applications from 32 of the 38 entities to which she says she applied, that it is unable to verify the legitimacy of any other applications Gibbons says she completed.  (Id. at 2.)  But Gibbons states that she disclosed the names of those employers in her answer to the Village's interrogatories and produced copies of the only six applications she still had in her possession.  (R. 145, Pl.'s Resp. at 4-5.)  If the Village wanted to verify

her statements regarding the breadth of her job search, it could have subpoenaed her applications from the remaining 32 employers. Because it failed to do so, and because there is no suggestion that the 32 applications are in Gibbons's "possession, custody, or control," *see* Fed. R. Civ. P. 34(a)(1), the court will not bar Gibbons from testifying regarding job applications not included in Ex. 23. Of course the absence of the applications may speak to the weight of her job-search testimony, but the Village has not shown that her testimony on this subject is inadmissible.

### 3. Motion No. 5

The motion is granted in part and denied in part. The Village seeks to bar Gibbons from testifying as to any psychological, psychiatric, or health issues that she suffered as a result of her termination because, according to it, that evidence would amount to improper lay testimony. (R. 112, Def.'s Mot. No. 5 at 1.) But, a plaintiff's testimony "about her mental and physical health and level of pain, fear, and anxiety prior to, during, and after the incident, is not an impermissible self-diagnosis." *See Starks-Harris v. Taylor*, No. 1:08-CV-176, 2009 WL 2970382, at *4 (N.D. Ind. Sept. 11, 2009). A plaintiff may describe her own injuries without testifying as to the cause, leaving the jury to draw its own inferences regarding causation. *Id.* at *5. In other words, a witness may properly describe her symptoms and their timing without a self-diagnosis or veering into describing the cause of the symptoms. *See Simmons*, 2017 WL 3704844, at *6. Accordingly, Gibbons will be permitted to testify as to her emotional issues without giving testimony of causation.

### 4. Motion No. 6

The motion is granted. The Village asks that Gibbons be barred from offering any evidence regarding any medical or economic damages that she has not previously disclosed. (R. 113, Def.'s Mot. No. 6 at 1.) Gibbons contends in response that she has never sought medical damages and has disclosed all evidence to economic damages in her Rule 26 disclosures. (R. 145, Pl.'s Resp. at 7.) And as for emotional distress, as discussed above Gibbons will be allowed to describe her symptoms before and after her termination to allow the jury to make inferences about their relationship to her claims. But previously undisclosed damages claims are barred.

### 5. Motion Nos. 8 & 9

The motions are denied. The Village seeks to bar Gibbons from offering any evidence or argument relating to the opinions of anyone other than decision makers as to the propriety of her layoff and as to her job performance at the time of her layoff. (R. 115, Def.'s Mot. No. 8 at 1; R. 116, Def.'s Mot. 9 at 1.) The Village argues that such testimony is improper lay testimony, is not relevant, and is unduly prejudicial. (Id.) Gibbons argues in response that both Chief Holevis and Sergeant Sailsbery should be able to testify as to the propriety of Gibbons's layoff and as to her job performance, because, she says, they were decision makers regarding her termination and re-hiring. (R. 145, Pl.'s Resp. at 8-9, 11-12.)

Generally, speculative testimony of co-workers as to a fellow employee's termination is not admissible. *See Reeves v. Fed. Reserve Bank of Chi.*, No. 00 CV

5048, 2004 WL 742248, *7 (N.D. Ill. April 6, 2004).  However, there is evidence in this case that Chief Holevis and Sergeant Sailsbery were more than mere co-workers with respect to Gibbons's termination and failure to re-hire and that they may have concrete facts within their personal knowledge on the subject.  *See id.* According to Gibbons, Chief Holevis was Gibbons's direct supervisor.  (R. 145, Pl.'s Resp. at 8.)  Also, Sergeant Sailsbery was in charge of hiring a part-time records clerk after Gibbons's termination, and recommended Gibbons for the job.  (Id. at 9.) As it appears they both had a role in Gibbons's termination and her re-hiring, they will be allowed to testify regarding those roles as long as there is proper foundation for their testimony.  The same is true about Gibbons's performance because Holevis was Gibbons's direct supervisor before she was terminated.  Also, if Sailsbery testifies that she was Gibbons's supervisor at certain points of her employment, she will similarly be permitted to testify as to her performance during those periods as long as such testimony is relevant to the issues in this case.  The court is not willing to bar Gibbons from introducing this evidence at this time.

### 6.    Motion No. 11

The motion is granted.  The Village seeks to bar testimony regarding Hanks's bankruptcy.  (R. 118, Def.'s Mot. No. 11 at 1.)  The Village contends that evidence of Hanks's bankruptcy is not relevant as he does not handle the Village's finances. (Id. at 1-2.)  Gibbons contends that she will only seek to introduce such evidence should the Village try and tout Hanks as being fiscally responsible as a part of its defense that Gibbons was terminated because of the Village's financial condition.

(R. 145, Pl.'s Resp. at 13.)  The court agrees with the Village that this evidence is not relevant.  However, Gibbons may introduce the evidence of Hanks's bankruptcy as impeachment evidence depending on Hanks's trial testimony.

### 7.     Motion No. 12

The motion is denied without prejudice.  The Village seeks to bar testimony regarding Fairman's arrest for driving under the influence of alcohol.  (R. 119, Def.'s Mot. No. 12 at 1.)  The Village contends that such evidence is not relevant to Gibbons's claims, but Gibbons asserts in response that she only intends to introduce such evidence as impeachment in response to the Village presenting evidence that she was terminated for failing to follow Village rules.  (R. 145, Pl.'s Resp. at 13-14.) In her response Gibbons alludes to a Village requirement that employees report arrests to their supervisors, and asserts that Fairman violated that rule by reporting his arrest only to his administrative assistant.  (Id. at 13.)  Although the court agrees with the Village that evidence of Fairman's arrest would be inadmissible as character evidence, *see* Fed. R. Evid. 404(a) & (b), it may be relevant to the extent that Gibbons is arguing that he was similarly situated to her but treated differently.  The court also concludes that the relevance determination is best made at trial, where the court will be better equipped to balance the probative value of this information against its prejudicial effect.  *See* Fed. R. Evid. 403.

### 8. Motion No. 13

The motion is denied without prejudice. The Village seeks to bar evidence of former Village Treasurer James Griegel's arrest and subsequent paid leave and discharge from the Village. (R. 120, Def.'s Mot. No. 13 at 1.) The Village contends that such evidence is not relevant. (Id. at 2.) Gibbons contends that she seeks to introduce such evidence to rebut the Village's defense that its financial condition was the reason for her termination, as she asserts that Griegel's paid leave for a terminable offense undercuts that stance. (R. 145, Pl.'s Resp. at 14.) The court finds that while the conduct underlying Griegel's arrest is not relevant, evidence that the Village kept him on paid leave during a criminal investigation for a terminable offense may tend to make the Village's defense regarding the Village's financial condition more or less probable. Therefore, the motion is denied without prejudice, and the relevance of such evidence should be determined at trial, where the court will be better prepared to weigh its prejudicial impact against its probative value.

### 9. Motion No. 14

The motion is taken under advisement. The Village seeks to bar Gibbons from admitting any previously undisclosed evidence at trial. (R. 121, Def.'s Mot. No. 14 at 1.) Gibbons agrees with the spirit of this motion but seeks to offer her Ex. 56 at trial, which she admits was not previously disclosed during discovery. (R. 145, Pl.'s Resp. at 15.) Exhibit 56 is Chief Robert Kowalski's employment contract. (Id.) Gibbons contends that the admission of this exhibit into evidence would not

prejudice or surprise the Village as it both drafted and adopted the document. The court takes this motion under advisement and will address the same at the pretrial conference.

### 10.    Motion No. 15(a)

The motion is denied. The Village objects to the introduction of Gibbons's Ex. 4, which is a letter of complaint Gibbons wrote in 2012 to the mayor and board of trustees, detailing conduct that she describes in the letter as acts of discrimination and retaliation. (R. 122, Def.'s Mot. No. 15. at 1.) The Village argues that because Gibbons would rely on the letter for the truth of its contents, the exhibit constitutes inadmissible hearsay. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c); *Jordan v. Binns*, 712 F.3d 1123, 1126 (7th Cir. 2013). Gibbons contends that the letter is not hearsay because, according to her, where a witness admits that an out-of-court statement is hers, and that it is true, the underlying statement does not amount to hearsay. In support of her assertion, Gibbons points to Federal Rule of 801(d)(1) and the accompanying Advisory Committee Notes, (R. 145, Pl.'s Resp. at 16), but that rule only applies where the declarant's prior statement is either inconsistent with the declarant's testimony and was given under oath, or is consistent with the declarant's testimony and is offered to either rebut an accusation that the declarant is lying or to rehabilitate the declarant's credibility.

*See* Fed. R. Evid. 801(d)(1).  Gibbons has not argued that either of those conditions exists here.

The three cases she relies on are similarly inapplicable.  In *Bell v. Milwaukee*, 746 F.2d 1205, 1274 (7th Cir. 1984) (*overruled on other grounds by Russ v. Watts*, 414 F.3d 783, 784 (7th Cir. 2005)), the court held that statements in a criminal complaint did not constitute hearsay where the defendant had been convicted of its charges and where the complaint described statements that amounted to party admissions and that were not offered for their truth.  Moreover, there the trial court admitted the evidence as an inconsistent prior statement.  *See id.* at 1274 n.83.  In *United States v. Klein*, 488 F.2d 481, 483 (2d Cir. 1973), a grand jury transcript that was sworn under oath was read to refresh a witness's recollection.  The court did not explicitly discuss the hearsay rule at all.  *See id.*  And in *Slade v. United States*, 267 F.2d 834, 838-39 (5th Cir. 1959), the court dealt with a prior inconsistent statement used to impeach a witness.  None of these cases support Gibbons's contention that her letter is not hearsay.

Gibbons argues in the alternative that she should be allowed to offer Ex. 4 as a recorded recollection under Rule 803(5), but even then the letter could only be read into evidence, because the rule only allows the exhibit to be received under this exception if it is offered by an adverse party.  *See* Fed. R. Evid. 803(5).  But of course if Gibbons were to proffer the letter solely for the purpose of demonstrating that she engaged in protected activity in 2012, it would fall outside of the hearsay rule.

Accordingly, the motion is denied but Gibbons may not offer the exhibit for the truth of the matter asserted.

### 11.  Motion No. 15(b)

The motion is granted.  The Village seeks to prevent Gibbons from introducing her Exs. 8 and 9, which respectively consist of an April 2010 letter in which Gibbons requests a meeting to discuss her termination pursuant to Village grievance procedures, and a May 2010 letter describing her belief that her April 2010 termination was an illegal retaliatory act.  (R. 122, Def.'s Mot. No. 15. at 2.) The Village contends that these exhibits constitute hearsay, and are not relevant. (Id.)  Gibbons contends that the documents are not hearsay, and are relevant to show her familiarity with the Village's pre- and post-termination procedures, and as evidence of the Village's pattern and practice of retaliation.  (R. 145, Pl.'s Resp. at 17-18.)

Starting with Ex. 8, the hearsay rule does not apply to this letter because Gibbons would not be offering it to prove the truth of any statement in that letter. The letter is only four sentences long, and in it, Gibbons simply requests a meeting to appeal her 2010 termination.  Gibbons says the letter is relevant to show her familiarity with the grievance procedures in 2010, but the court agrees with the Village that the statement is not relevant here, where her procedural due process claim stems from her 2014 termination.  Also, whether Gibbons was familiar with the grievance procedures is not relevant to the issue of whether she was entitled to any review process.

Turning to Ex. 9, the Village is correct that this letter includes a number of hearsay statements. In that two-page letter Gibbons sets out her allegations that in 2010 the police chief violated her civil rights in a number of ways. If used to establish that she was subjected to discriminatory conduct in 2010, those statements would be hearsay. Gibbons asserts that the letter is admissible to show that the Village has engaged in a pattern and practice of retaliation. (R. 145, Pl.'s Resp. at 17.) But for the letter to support her pattern and practice allegation, its contents must be taken as true, so the hearsay problem persists. Moreover, in her third amended complaint Gibbons alleges that it was Hanks who had a "practice" of retaliating against employees with past or present lawsuit against the Village, (R. 61, Third Am. Compl. ¶ 11), and Hanks is not mentioned anywhere in Exs. 8 or 9. In fact, Gibbons alleges that Hanks only became mayor in November 2012, more than 18 months after Gibbons wrote her letters. (Id. ¶ 10.) Because Exs. 8 and 9 are not relevant to the pending claims, and because the statements in Ex. 9 constitute hearsay, the motion is granted.

### 12. Motion No. 15(c)

The motion is granted. The Village objects to Gibbons's Exs. 12 and 14, which are letters written by Gibbons's current attorney to the Village's attorney. (R. 122, Def.'s Mot. No. 15 at 2–3.) The Village contends that these letters represent irrelevant and prejudicial hearsay. Oddly, the Village included the same letter set out as Gibbons's Ex. 14 in its own list of trial exhibits. But putting that aside, the court concludes that these exhibits should be excluded. As the Village points out, in

order to lay a proper foundation for these exhibits Gibbons would need to have her own attorney testify as to the drafting of the letters, and that would be unduly prejudicial. Nor has Gibbons shown that the "state of mind" exception to the hearsay rule applies to these letters. *See* Fed. R. Evid. 803(3). Gibbons proposes to offer Ex. 14 to demonstrate Gibbons's "belief" that she was laid off in October 2014 rather than terminated. (R. 145, Pl.'s Resp. at 19.) But the state of mind exception specifically does not cover a statement of belief used to prove the statement believed. Fed. R. Evid. 803(3). And she has not explained how a letter between two attorneys could establish Hanks's state of mind.

### 13.    Motion No. 15(d)

The motion is granted. The Village objects to Gibbons's Ex. 26, which is a letter signed by numerous Village police officers complaining about Gibbons's April 2010 termination. (R. 122, Def.'s Mot. No. 15 at 3.) The Village argues that this letter constitutes irrelevant hearsay. (Id.) Gibbons contends that the letter is not hearsay because one of its signatories, Sailsbery, will testify in court regarding its contents and be subject to cross examination. (R. 145, Pl.'s Resp. at 20.) Again, that assertion reflects a misunderstanding of the hearsay rule, which applies to out-of-court statements made by witnesses. *See* Fed. R. Evid. 801(c). Moreover, even if Sailsbery's presence somehow mitigates the hearsay rule, that would not account for the fact that the exhibit represents a collective statement submitted by 29 witnesses. Sailsbery's live testimony would not make up for the absence of the other witnesses who signed the statement. Therefore, to the extent Gibbons intends

to proffer the letter to demonstrate the truth of its assertions, such as that Gibbons had no history of disciplinary action before 2010 or that she was an integral part of the police department's operations, the letter is inadmissible hearsay.

14.     **Motion No. 15(e)**

The motion is granted.  The Village objects to Gibbons's Ex. 30, which consists of four letters written in 2014 and 2015 from Assistant Cook County State's Attorney Patrick McGuire to Chief Holevis notifying him that certain criminal proceedings had to be continued based on his department's failure to produce subpoenaed material or witnesses.  (R. 122, Def.'s Mot. No. 15 at 4.)  Although these letters clearly constitute hearsay to the extent Gibbons intends to use them to show that the department failed to produce subpoenaed materials after her termination, Gibbons contends that they are admissible under the business records exception to the hearsay rule.  But the business records exception requires a "custodian or another qualified witness" to testify that the document meets all of the business records requirements, including that it was made by someone with knowledge, was kept in the course or regular activity, and was made in accordance with a regular practice of that activity.  Fed. R. Evid. 803(6).  Gibbons suggests that Holevis and Sailsbery can serve as witnesses qualified to demonstrate those conditions because "they have seen the original" and they "can testify about receiving the letters." (R. 145, Pl.'s Resp. at 22.)  Under Gibbons's reasoning, anyone who merely lays eyes on a document or receives a business record is a witness qualified to establish that it meets the business records exception.  The exception does not stretch that far.

Gibbons argues in the alternative that there is no need to authenticate the document because, according to her, the Village "relied upon the documents 'for their accuracy' in the underlying criminal proceeding and would concede the accuracy of the documents." (Id.) But there is no evidence to support her assertion that the Village relied on those documents, and for all the court knows, the Village could have objected to their accuracy. Moreover, the case that Gibbons relies on to support her argument, *Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000), held that the district court did not abuse its discretion in overlooking the lack of authentication from a qualified witness given "the rather peculiar circumstances" that existed there. Specifically, there the party opposing admission of a document introduced documents in the same case that relied on the accuracy of the document he wanted to exclude, suggesting he conceded their accuracy. *Id.* Because no such "peculiar circumstances" exists in this case, Gibbons has not shown that she should be able to rely on Ex. 30 as a business record without proper authentication.

### 15. Motion No. 15(f)

The motion is denied. The Village objects to Gibbons's Exs. 33 and 34, which are two separate memoranda drafted by Sergeant Sailsbery. (R. 122, Def.'s Mot. No. 15 at 4.) The Village contends that these statements are hearsay and are not relevant as Sailsbery did not hold a decision-making position regarding the decision to re-hire Gibbons. (Id. at 5.) Exhibit 33 is a correspondence from Sailsbery to Fairman in August 2015 requesting that he recall Gibbons for the part-time records clerk position and calling her "the most qualified candidate." (Id.) Exhibit 34 is a

memo authored by Sailsbery that same month and directed to Fairman, Hanks, and the board of trustees setting out her belief that the Village did not follow its regular hiring procedures in filling the position of part-time records clerk. (R. 145, Pl.'s Resp. at 24.) Both of these memos are relevant to Gibbons's claims that the Village failed to re-hire her as retaliation, because they suggest that Sailsbery did have authority to hire a part-time records clerk in August 2015 and they demonstrate that Gibbons was Sailsbery's choice for the position. But regardless of Sailsbery's presence in court, the memoranda represent hearsay if they are submitted to prove the truth of the matters asserted therein.

However, Gibbons has shown that Exs. 33 and 34 may be treated as an admission of a party-opponent because the Village had given Sailsbery—who was employed by the Village at the time of the statements—authorization to make a statement on the subject of Gibbons's qualifications and her statement is offered against the Village. *See* Fed. R. Evid. 801(d)(2)(C) & (D). If Sailsbery's testimony bears those facts out at trial, the court will allow Gibbons to offer these exhibits as admissions by a party-opponent. *See Jordan*, 712 F.3d at 1128.

### 16.    Motion No. 15(g)

The motion is denied. The Village objects to Gibbons's Exs. 42, 45, and 52 which are transcripts of audio recordings. (R. 122, Def.'s Mot. No. 15 at 5.) The Village contends that while the recordings themselves are admissible, the transcripts are not admissible because the court reporter who generated them was not present when the recorded statements were made, and is not listed as a witness.

Accordingly, the Village argues, Gibbons cannot establish how the court reporter identified the voices on the tape. (Id. at 6.) Gibbons contends that the transcripts are only to guide the jury in understanding the recording, and that any concerns about the validity of the transcripts will be resolved through Jury Instruction 2.7, which both parties have agreed should be admitted. (R. 145, Pl.'s Resp. at 25-26.) Agreed Jury Instruction 2.7 cautions the jury that the transcript is merely a guide, that it is not evidence of what was actually said, and that if the jury notices any difference between the recording and the transcript, the jury is to follow the recording. This court finds that this jury instruction sufficiently cautions the jury to only use the transcript as a guide.

### 17. Motion No. 15(h)

The motion is denied. The Village objects to Gibbons's Exs. 54, 56, 61, and 62. (R. 122, Def.'s Mot. No. 15 at 6.) Exs. 54 and 56 are the employment contracts for Fairman and Kowalski. (Id.) Exs. 61 and 62 are ordinances creating the positions of Village Administrator and Public Safety Director. (Id.) The Village contends that these exhibits are not relevant, and specifically that Ex. 56 should be barred as it was not disclosed during discovery. (Id. at 7.) Gibbons contends that Exs. 54, 56, 61, and 62 are relevant to rebut the Village's budgetary defense. (R. 145, Pl.'s Resp. at 26.)

The court has taken under advisement whether to bar Ex. 56 based on Gibbons's failure to produce it earlier, but the court will focus on the relevance objection here. Gibbons contends that these exhibits are relevant to establish that

the Village hired new employees just two months after terminating Gibbons for budgetary reasons. (Id. at 27.) In other words, she argues that these hirings cut against the Village's defense that she was laid off because of a strapped budget. This court agrees that these exhibits are relevant because they potentially undermine the Village's defense.

### 18. Motion No. 15(i)

The motion is denied. The Village objects to Gibbons's Ex. 55, which is a Facebook post by Burgess. (R. 122, Def.'s Mot. No. 15 at 7.) The post states that Burgess believed that Sailsbery demonstrated the capabilities to be the Chief of Police and laments the use of funds to hire an outside police chief rather than additional police officers. (R. 145, Pl.'s Resp. at 28.) The Village contends that this exhibit is hearsay, and does not relate to any evidence of retaliatory intent from the Village. (R. 122, Def.'s Mot. No. 15 at 7-8.) The court disagrees and finds that Gibbons may offer this post as an admission of a party-opponent.

### 19. Motion No. 15(j)

The motion is denied. The Village objects on relevance to Gibbons's Ex. 60, which is Fairman's LinkedIn page. (R. 122, Def.'s Mot. No. 15 at 8.) Gibbons contends that the exhibit is relevant to rebut the Village's budgetary defense, because according to her, it shows that the Village was willing to create a new position for Fairman despite his lack of experience in municipal government. (R. 145, Pl.'s Resp. at 30.) Because the court agrees that the resume information in Ex.

60 is relevant to Gibbons's rebuttal to the Village's budget defense, and because the Village raises no other objections to this exhibit, the motion is denied.

### 20. Motion No. 15(k)

The motion is granted. The Village objects on relevance to Gibbons's Ex. 79, which is a complaint filed in state court by the Village Mayor and Village Board against Richard Stomper, a business representative for the Fraternal Order of Police, who allegedly published defamatory statements at a Village Board meeting. (R. 122, Def.'s Mot. No. 15 at 8.) Gibbons contends that she should be allowed to introduce this exhibit to rebut any attempt by the Village to suggest that the damages she seeks are too high, by showing that the Village valued its damages in a defamation case at an amount of $300,000,000. (R. 145, Pl.'s Resp. at 31.) This court agrees with the Village that the comparison Gibbons suggests is wholly irrelevant to Gibbons's claims in this case, which do not include any allegations of defamation.

## Conclusion

For the foregoing reasons, Gibbons's Motion Nos. 1, 5-7, 13, 14, and 16 are granted, Gibbons's Motion No. 3 is granted in part and denied in part, Gibbons's Motion No. 4 is taken under advisement, Gibbons's Motion Nos. 2, 9-12, and 15 are denied, the Village's Motion Nos. 1, 2, 3, 6, 7, 10, 11, 15(b)-15(e), and 15(k) are granted, the Village's Motion No. 5 is granted in part and denied in part, the Village's Motion No. 14 is taken under advisement, and the Village's Motion Nos. 4, 8, 9, 12, 13, 15(a), and 15(f)-15(j) are denied:

ENTER:

**Young B. Kim**
**United States Magistrate Judge**